Shower Enclosures America, Inc. v. Shower Enclosures America, Inc. v. Shower Enclosures America, Inc. May it please the Court, my name is Joseph Kincard and I am here for Pelham Coastal Industries. Mr. Kincard, as a housekeeping matter, in the blue brief at 6, you say that independent claim 1 is representative. But since you're making individual arguments regarding the dependent claims, I assume you mean it's illustrative. It is illustrative. Are independent claims 12 and 22 representative or illustrative? Twelve would be illustrative, 22 I think in this case would also be illustrative. Thank you. Obviously, we're here today asking that you overturn the Board's decision on claims 4 and 6, 10 and 15, as well as claims 33 and 34. I'm going to address first 4, 6, and 15. I think they group together nicely and then move on to 10. Judge DeFranco does a very nice job of summarizing most of the items regarding claim 10, but we'd like to add a few of those to that. Directing your attention to the PTAB's determination regarding 4 and 6, the PTAB draws to the distinction that the stops in the 944 patent are positioned at the end of the track, whereas COMO only limits the stops to the rail members. Doesn't COMO disclose both end caps exist at the end of track in figure 4 and that rail members are connected to a track? Thank you, Your Honor, yes. Don't thank me. I think that's true. I believe it's true, and it probably is a terrific segue into just a very basic syllogism. The tracks are coupled to the rails, uncontroverted. The rails have stops attached to them. Therefore, the tracks are coupled to the stops. The limitations coupled and interlocked, specifically in the claims construction, do not require direct contact at all. The only discussion of coupled in the detailed description specifically names parts, rails and tracks, that never touch each other, and they move in relation to each other. And the Board acknowledges this in their claim construction, but for some reason interpreted it much more narrowly, essentially importing a new limitation into the claim. We'll start with claim 4 and coupled, that it be in contact with it, and that they wanted to know where it's in contact with it. And it goes against the claims construction, and in truth, what this invention would be about. I guess maybe one way of understanding the Board's concern here was that, let's assume for the moment that inside your head, you were thinking stops mounted to the rail members, and the rail members are somehow coupled to the tracks. And so therefore, the stops are coupled to the tracks. Yes. But the explanation in the petition or in your papers didn't quite lay that out. That the papers were more geared towards almost an assumption that having elements 150 coupled to carrier tracks 122, 124, 126 corresponds to the coupling of stops to the first and second track members, period. And so therefore, the Board could have assumed, maybe reasonably, that you were thinking that the 122, 124, and 126 rail members correspond to the first and second track members, which I think everybody agrees is not the case. If I follow correctly, the rail members are coupled to the track members, and that... In Como, you're saying. In Como, and if I can refer you to, I believe it's page nine of the blue brief, and we have the parts laid out there in an annotated version of figure six, and the carrier here, 122, would be analogous to the rail. And the catch caps would be the stops, and probably importantly, they're located at the end, but they're also very movable. And so, if you look above to 11, the tracks would be the yellow portions, first and second track members there. Does that answer your question? Well, I guess what I'm trying to figure out is what was it that you argued to the Board below? And if it looked to the Board like you were arguing that Como's rail members, 122, 124, and 126, are the corresponding claim to track members, then it wouldn't be unreasonable for the Board to say that's an incorrect matching up of the Como disclosure to the claim, because of Como's rail members are not the claim track members. The rail members are the, what's the other term? Rail members. I believe that it's laid out here on figure 11 and figure six, where what we explained to the Board is that the first and second track members are in figure 11, and you can see the cross section of those. And they would correspond with, I guess, items one, not 130, I am sorry, 132, but they're labeled here in red, first and second track members. And that actually becomes very important because there was an in-depth discussion on the shape of that cross section and whether that would include a C shape. So I do believe that the Board understood we were referring to that portion as the track members. And that they... I mean, do you have a site to put your petition? I can probably do that. Let's try appendix 279 with expert pointer who talks about modifications of the track elements. Well, it would be in your petition, right? I'm sorry, it should be in the petition, too. I cannot point you to that at this moment. But I do know that we had an in-depth discussion on the shape of the tracks, that the Board was well aware that it was this cross section part, that the tracks were, in fact, within the header and that these rails stayed on it. In fact, the Board also commented on the idea that the stops were attached to the rails, and they had a problem with that with Claim 6 also, that the stops were on the rails and that we had not explained how to attach them to the tracks. And so I do think that they understood the lining up of that. Go ahead. Like, look at page 69, for example, paragraph 152. Yes, sir. This is your expert. I don't know how to say his name for an arrow or something. Yes. Yes. Okay. Okay. So he says, looking at 8269, paragraph 152. Please continue. All right. Well, I'll read it. It says, Como discloses catch assemblies 150, plurality of stops, coupled to first and second and third carrier tracks 122, 124, 126, parentheses, track members, closed parentheses. And then it shows an annotated version of figure 6 where you identify carrier track 124 as first and second track members. So I'm just saying if I'm the board and I'm reading this, it looks to me like your theory of Como is the stops, which are mounted to the carrier tracks 122, 124, 126, which you believe to be the track members, therefore meet the claim limitation of a plurality of stops coupled to the first and second track members. Your Honor, I understand your concern, and I believe that we refer to those as the rail members, but if they are to be viewed as track members, clearly the stops are at the ends then on them or attached there too. But I think I thought you said everybody agrees now that 122, 124, 126 are not track members. They're rail members. And so the theory presented to the board, however, was that those carriers were first and second track members. And so that's what the board disagreed with when it concluded, sorry, I don't see how you made the case for explaining why this reference meets this limitation. Because those aren't track members. Those are rail members. If they were track members, then the reason given by the board would not apply that we failed to show where the stops would be on the track members. And so, in fact, it would take away the board's reason for saying that this was patentable. By indicating that there's stops here, and if we presume to adopt the interpretation that you pointed out there, then the stops are clearly coupled to the tracks. And so then they would have the effect that the board said those aren't track members. Those are rail members. And so, thank you. That is my point. I think in the subsequent writings and in the distinction, we named them as rail members, and we distinguished between them. But then you never made the extra explanation of, okay, we're pivoting away from what Paranaro said in paragraph 152. Let me be a little more clear. Our theory is the COMO's rail members are coupled to these other things, which are the track members. And so, therefore, when you see these assemblies 150, which are the plurality of stops that are plainly coupled to now what I'm calling rail members, not the track members. You will also see that now those, what I'm calling today, not before, but today, the rail members are coupled to these other things called track members. And so that's why COMO has stops that are coupled to track members as required by the claims. And I think that the board and this court can be in full agreement that the rails, the tracks, and the stops are there. And that coupled is a very, very broad claim limitation. One of the reasons that we give is that it's a functional limitation and should not be given weight. But the parts are there. The structural elements are there. And they've been pointed out, perhaps erroneously, by Mr. Caruana. But clearly, the court understood where we had tracks, where we had rails, and where the stops were. Coupled does not require that they ever come into contact with each other. The pieces are there. They do have the desired effect. So there's several reasons why this court could overturn that, which would be, one, the functional limitation should not apply. They're coupled. And there's a whole line of cases in Reischreiber. You're eating your, what little time you have left. Okay. All of this applies to 6 and to 15 also. And two, that the experts have said that it would be very obvious to make this adaptation, and that these things are not calcified hearts or extreme chemistry here. What we're dealing with is simple mechanical parts that have been around for 100 years. And so it would be obvious for someone to take stops and to arrange them on rails or tracks in these configurations. If you would, those skilled in these arts can put these pieces together after 100 years, almost as easy as maybe someone on the street puts together Lego pieces. This is not challenging. And so I understand your concern in the initial clarification. I do submit that the court understood what was a track and what was a rail and what was a stop, and that they discussed that pretty much in depth in the reasoning that there would be invalidation of the other claims. I'd like to reserve what's left. Thank you. Good morning, Your Honors. I'm Ryan Fountain. I represent Shower Enclosures America. As a housekeeping matter initially, I would say the representative claims are 1 and 12. The examiner found two distinct areas of patentability, and I think 1 and 12 cover those. The other two independent claims make the distinction between panels and doors. But for our purposes, we have focused over and over again on header tracks, rail members, track members, and unfortunately what I just heard was a nose of wax argument. The PTAB determined that a number of claims were anticipated by Ben Wielden. Pardon me? The PTAB determined that a number of claims were anticipated by Ben Wielden. It seems that your only argument regarding anticipation is that the PTAB erred by failing to include creditable Posita testimony. No, sir, that's not correct. That is the primary thing. The primary area of law is misunderstanding the level of ordinary skill in the art determination, but also in the prior art analysis itself, consistency is absolutely required. You can't call something a header track and then also call it a track member because you're then referring to the same components as two different things. And we detailed that at length in here. But I think that distinction with regard to confusing elements was shown in the discussion just a moment ago with regard to Claim 6-2 as well. If we look at Appendix page 90, yes, the board said we think you've put your stops here, but not here. But even if it turns out you can twist this meaning, you still did not explain sufficiently how they interlock. Como says there are stops at the end of a rail that is attached to a track, and 9-4-4 says there's a stop at the end of a track upon which there's also a rail. What's the difference? When we read the entire word of that claim, it's for the interlock function. And the interlock function was what the board said, and not just the function, but the structure. Because you can't have something interlocked without a structure that holds it there. And the explanation of why it would be obvious to do that, or anticipation to do that, does not show up there. And that's at A-90. Now, getting back to LOSA, fundamental flaw. Does not necessarily mean the level of ordinary skill in the art. The level of technology talks about, in effect, the level of invention. How do we get to where we're at? But technology isn't people. Whose eyes look through these glasses to see the prior art? There is no evidence here of who that is. The inventors were engineers knowing what engineers know. Do engineers know the skill level of the people around them? Mr. Ponario, or however it's pronounced, I'm sorry, clearly didn't. He said at one point in his testimony, I considered the level of skill even of the inventor. But when asked what that level of skill was, he didn't know. So he proved he could not have done what he said he did. There's nothing in the evidence to show what the level of that skill is. And without that, everything... Did you put on an expert? Counterweight is not confrontation. You don't want me to put on an expert as a counterweight. Wait, wait, wait. We did not put on an expert. Okay. We did not. And the reason we didn't do it, because that would be mere counterweight. To simply say the level of skill is a high school grad, or the level of skill is a Ph.D., tells you as a fact finder nothing. Without confrontation, the cross-examination to distill that analysis down, to distill that evidence to find out, is there merit to it, or is there nothing to it? And when we confront it on cross-examination... Can you give me an example of what you think needed to be said or done that is missing from this record? I know you're saying a lot of words, but just reduce it down to what's the magic thing that needed to be done that wasn't done here? Their experts were told by their attorneys six factors they had to consider. Okay. Go out and determine the level of skill in the inventor. Go out and determine the level of skill... What's missing? What's missing? What did they not say that needed to be said? Did he graduate from high school, college, Ph.D.? How many years' experience has he had? Of anyone else in this field. Well, couldn't an expert have told us that? They could have, but they didn't. That's my point. Because what you really want is the truth. You don't want me to tell the board... You're telling me your expert wouldn't tell the truth? I'm telling you if I simply put an expert on, and you had their expert versus our expert, the board would simply have to choose between the two. But what you really want to know is, what's the basis of the expert's opinion? Did one of these experts conduct a survey, or did he not? So, zero is a number in this context. Their expert had zero factual basis. And under 702, he has to have sufficient facts. Federal Rule of 702. Federal Rule of 701, he has to have reliable facts, reasonable facts. He had no facts in which to form either a lay opinion or an expert opinion. His opinion is, the technology is X. Okay, cool. But he could have just as easily come on board and said, I'm a neurosurgeon, or a heart valve surgeon. I'm an expert in this. But what does that tell you about the people? Nothing. And that was our point. Zero is a contradiction of college degree, engineer, two years experience in the field, and all that sort of stuff. Without something there, the board can't pass Go. There is no exception in 35 U.S.C. Section 112 for simple technology. Everything has to be viewed through the eyes of someone of ordinary skill. We don't have that here because we don't know who that is. Therefore, having failed that burden of proof, that critical foundational burden of proof, the board should not have gone further with the initial disclosure. Fine, they did. But they went on to a final written decision based upon no evidence of the level of ordinary skill in the art. They said, in the opinion, the prior art can show it. But that's no different than saying the sky can be blue. Did it? Is it gray? Is it black? What is the prior art showing? They didn't articulate to us. And under the Administrative Procedure Act, they're required to articulate their findings and apply those findings reasonably to the issues of law. What they said, their fundamental mistake was, technology is enough to determine the level of ordinary skill in the art. And that, I submit, is an error of the law. Technology is not what people know. Technology is the creation of inventors, the creation of an abundance of people that tells you nothing about the ordinary person of ordinary skill. Unless there are any other questions at this time, I would reserve the remainder of my time for rebuttal. Thank you, sir. Thank you, Your Honor. And obviously, you caught me off guard with your question before, but I think I understand now where the confusion arises. Comeo refers to the items that you referred to, carrier tracks 122, 24, and 26. But both Examiner Bradford and ourselves have used that item as a rail, even though Comeo referred to them as a carrier track. It is not the header track or the first and second tracks of the claims. We need to have that transition over. Your red light's on, Counsel, I let you answer that question. Okay. So, wrap it up? So, I'm going to wrap it up. And that's also supported what I just said on Appendix 91, that the Board understood the distinction between the tracks and the rails of Comeo. We have given you in the briefs a number of reasons why these should be overturned. They've imported limitations that did not exist. It goes against the evidence of all the experts that it would be very easy to adapt these things. And I think that Claim 10A is one or more is such a profound item of law that it should be followed. Thank you. Your Honor, the only other item in rebuttal, I would say, is the experts have said it's easy to adapt this. Those are mere conclusory assertions of experts, and the Board recognizes that. Do you have any other questions I can help with? Thank you, Your Honor. Thank you for your courtesy.